IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN A. GREEN,

                            Plaintiff,                      OPINION AND ORDER

    v.

                                                          12-cv-761-wmc

STEVEN T. CHVALA and BRADLEY
SCHROEDER,

                            Defendants.

---

        In this civil action, plaintiff Steven A. Green brings: (1) a Fourteenth Amendment claim against defendant Dane County Deputy Sheriff Bradley Schroeder and (2) a Fourth Amendment claim against defendant City of Madison police officer Steven T. Chvala. Both claims arise out of Green's attempt to flee from law enforcement officers after the same, initial traffic stop. Green contends that Schroeder unjustifiably shot at his car as Green fled from the traffic stop and that Chvala used excessive force in the course of apprehending him after his attempt to elude the officers.

        Before the court are defendants' motions for summary judgment. (Dkts. #50, #54.) Also pending are various motions filed by plaintiff, including a motion for reconsideration (dkt. #45), a motion for leave to amend (dkt. #76), a renewed motion for assistance in recruiting counsel (dkt. #80), and a motion for extension of time (dkt. #85).

UNDISPUTED FACTS[1]

Shortly after 7:00 p.m. on September 4, 2010, Deputy Schroeder was riding in a marked, Dane County Sheriff squad car with his deputy trainee at the wheel. Spotting a vehicle with no front license plate in violation of Wis. Stat. § 341.15(1) heading in the opposite direction, the deputies made a U-turn. When behind the vehicle, the deputies also flashed their lights.

Plaintiff Steven A. Green was the only occupant of the vehicle. Initially, he sped up when he saw the deputies, but eventually he pulled into a parking lot at 2910 Hoard Street and parked the vehicle. After the trainee had parked the squad car at an angle behind Green, Schroeder exited the squad car, but waited for the trainee to finish reporting information about the vehicle. Shroeder did this to allow the trainee to make the first contact with Green.

---

[1] Defendants argue that Green has failed to create genuine issues of material fact because his summary judgment submissions are unsupported by any affidavit or declaration. They also argue that the exhibits to which Green cited in responding to defendants' proposed findings of fact -- primarily consisting of excerpts of reports concerning the events that appear to be prepared by law enforcement officers -- are both unauthenticated and inadmissible hearsay. Although the first argument would ordinarily be well taken, Green responded by moving to amend his summary judgment submissions with a declaration that his allegations were true, explaining that he misplaced his certificate of declaration when he initially filed his responses. (Dkt. #76.) Given Green's status as a *pro se* litigant, the court will grant his motion to the extent his allegations could reasonably be based on his personal knowledge. *See* Fed. R. Civ. P. 56(e) (stating that when a party fails to support or address a fact according to Rule 56(c), the court may "give an opportunity to properly support or address the fact"). With respect to the excerpts Green submitted, the Seventh Circuit has recently noted that "the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (emphasis in original). If the excerpts were authenticated, then they likely would be sufficient create a genuine issue of material fact. *See Pullen v. House*, No. 13-cv-827-bbc, 2015 WL 736679, at *3-4 (W.D. Wis. Feb. 20, 2015). Given that the excerpts include no evidence of their authenticity, however, they cannot be used to create an issue of fact. Under these general guidelines, the court finds the following to be material and undisputed facts for summary judgment, except where otherwise noted.

After Schroeder had gotten out of his squad car, Green maneuvered his vehicle to exit the parking lot the same way the cars entered it, which required him to drive past the deputies' squad car. Schroeder claims that Green's car struck him as he passed by, *despite* Schroeder's attempts to backpedal out of the way, which prompted him to fire two shots at Green in quick succession.[2] Green concedes that he does not know whether he hit Schroeder, but also avers that he did not accelerate or swerve toward Schroeder. After Schroeder fired his weapon, Green continued out of the parking lot. Fortunately, neither of the bullets hit Green, although one impacted the side window of Green's car.

At approximately 7:10 p.m., Officer Chvala drove toward the 2900 block of Hoard Street, having heard from dispatch that an officer was possibly injured by a suspect who attempted to ram that officer in the course of a traffic stop. After dispatch reported that officers had located Green's vehicle, Chvala then headed to Myrtle Street near Packers Avenue. Chvala eventually spotted the vehicle and then heard from dispatch that Green had fled.

As Chvala drove along a path near Myrtle Street searching for Green, he noticed a black male crouching behind a camper in a nearby backyard. Chvala broadcasted his discovery on his police radio, then parked his vehicle. After seeing and hearing Chvala park the car, Green ran away. Green then encountered two other Madison Police Department Officers, who drew their weapons and ordered Green to get on the ground. Green got on his hand and knees in response.

---

[2] On September 6, 2010, the Dane County District Attorney found that Schroeder's use of deadly force was justified.

Green and Chvala present somewhat different accounts of what happened after Green got on his hands and knees. Chvala believed that Green was considering an escape route while still on his hands and knees. (Def.'s Repl. PFOF (dkt. #71) ¶#10.) Accordingly, Chvala describes: (1) using his hands to push Green onto his stomach; (2) pulling Green's left arm behind Green's back; and (3) securing it there by placing his right knee along Green's left elbow, close to his side. (*Id.* at ¶#11.) Consistent with what he learned in his law enforcement training, Chvala claims he used this "three point position" to stabilize Green to be handcuffed, applying only as much force with his knee against Green's side as necessary to keep Green's arm under control. (*Id.* at ¶¶#12-15.) Chvala also claims that he maintained this position of control on Green only until another officer placed handcuffs on him. (*Id.* at ¶#17.) Finally, Chvala avers that he got off of Green after officers handcuffed him and made no more physical contact with Green outside of a custodial search. (*Id.* at ¶#18.)

Green disputes Chvala's account of the arrest in a number of respects. Specifically, he claims to have voluntarily laid on his stomach after the officers commanded him to do so. (Pl.'s Resp. Def.'s PFOF (dkt. #64) ¶¶9-11.) He also claims Chvala kneed him in his ribs *after* he was handcuffed and lying motionless on the ground. (Pl.'s Resp. Br. (dkt. #63) 2.) Finally, Green alleges that he suffered bruised ribs as a result of Chvala kneeing him. (Compl. (dkt. #1) 5.)

4

OPINION

I.  **Fourteenth Amendment Claim Against Deputy Sheriff Schroeder**

The substantive component of the Due Process Clause of the Fourteenth Amendment prohibits the government from engaging in conduct toward citizens that "shocks the conscience." *Palka v. Shelton*, 623 F.3d 447, 453-54 (7th Cir. 2010); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). In the context of an arrest, conscience-shocking behavior would include acts "intended to injure in some way unjustifiable by any government interest." *Steen v. Meyers*, 486 F.3d 1017, 1023 (7th Cir. 2007) (quoting *Lewis*, 523 U.S. at 849). Making lawful traffic stops and pursuing individuals who fail to stop are certainly justifiable government interests, but an officer violates the Fourteenth Amendment when he intends deadly harm "that goes beyond the traffic stop [or] the decision to pursue." *Steen*, 486 F.3d at 1024. The Supreme Court has instructed that in this context, an "[a]sserted denial [of due process] is to be tested by an appraisal of the totality of facts in a given case." *Lewis*, 523 U.S. at 850 (quoting *Betts v. Brady*, 316 U.S. 455, 462 (1942)); *see also Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) (describing the similarities between the context-sensitive analyses involved in both Fourth Amendment and Fourteenth Amendment claims).

The court originally denied Green leave to proceed on his claim against Schroeder on the ground that it was barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994). Green had pled no contest in state court and was convicted of second-degree recklessly endangering safety in violation of Wis. Stat. § 941.30(2). (Dkt. #9.) On appeal, the Seventh Circuit held that Green stated a viable Fourteenth Amendment claim against

5

Schroeder, based on his allegation that Schroeder shot at Green despite his slowly driving past Schroeder.  *See Green v. Chvala,* 567 F. App'x 458, 460 (7th Cir. 2014).  Accordingly, the Seventh Circuit vacated this court's decision and remanded the case for further proceedings.

There is no dispute that Green turned his car to head out of the parking lot and drove it toward the squad car from which Schroeder had just exited.  Consistent with Schroeder stating that Green's car hit him, the audio content of the video recording of the traffic stop captures Schroeder's deputy trainee broadcasting over his radio that Schroeder was injured immediately after he fired his gun.  Additionally, medical records indicate that Schroeder received emergency treatment at Meriter Hospital on the night of September 4, 2010, where he was prescribed pain medication for thigh and elbow contusions.  (Aff. of Sheila M. Sullivan Ex. A (dkt. #75-1) 2, 4, 6.)

Viewing the facts in the light most favorable to Green, however, the court cannot conclude that Schroeder's actions were justified in light of the context of the traffic stop. Green maintains that he did not swerve or accelerate toward Schroeder, who Green says was never in front of his vehicle.  The video shows that after parking his car for a moment, Green then slowly backed out, paused with his car in drive and turned his wheels in the direction of the parking lot exit before accelerating toward the exit through an opening between the squad car and other parked cars.  Nearly twenty seconds elapsed between the reverse lights on Green's car first illuminating after he initially parked and Green accelerating out of the parking lot.  At no time in the video is Schroeder visible, but after Green's vehicle begins moving forward, the audio captures Schroeder yelling at

6

Green to park the car, then a muffled sound before two gunshots are fired in rapid succession.

As a result, the video does not resolve the material disputes of fact regarding the manner in which Green drove out of the parking lot and whether Schroeder fired his gun in self-defense.[3] *See, e.g., A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013) (observing that self-defense is a legitimate law enforcement objective). Rather than the fast-paced and chaotic situation that Schroeder's account suggests, the video indicates that Schroeder had adequate time to assess what would constitute a justifiable response to Green's actions. In fairness, Schroeder does contend that he heard his deputy trainee report that Green's vehicle was moving over his radio, then "turned to see Green heading directly for him." (Def.'s Repl. PFOF (dkt. #74) ¶¶#17-18.)

Contrary to these assertions, however, the video suggests that Schroeder yelled at Green to park the car several seconds before he accelerated toward the exit, permitting an inference at least that the encounter did not unfold so quickly that the clarity of Schroeder's judgment would have been diminished. *Cf. Abbott*, 705 F.3d at 733 (explaining in the Fourth Amendment excessive force context that "an officer will not be held liable if the circumstances under which the force was used evolved so rapidly that a reasonable officer would not have had time to recalibrate the reasonable quantum of force"). Even though it appears that Schroeder was hit (or at least bumped) by Green's car, therefore, there is a genuine dispute about whether Schroeder unjustifiably created a

---

[3] Schroeder does not contend that he had any reason to believe Green presented a serious threat to the deputies or others at the time the deputies pulled him over, nor as he began to drive out of the parking lot.

7

situation necessitating self-defense, given that Green maneuvered his car toward Schroeder's general direction relatively slowly in an area where Schroeder could have arguably avoided the danger of getting hit. *See Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) (finding that an officer was not entitled to summary judgment on a Fourth Amendment claim because the central question was whether the officer stepped in front of the driver's vehicle, leaving the driver no time to brake and thereby "unreasonably creat[ing] the encounter that ostensibly permitted the use of deadly force to protect him[self]"); *see also Abraham v. Raso*, 183 F.3d 279, 293-94 (3d Cir. 1999) (holding that summary judgment was not appropriate for a Fourth Amendment excessive force claim in part because questions regarding the severity of the officer's injuries, how fast the driver accelerated and the degree to which the space was open raised genuine disputes about whether the officer could have gotten out of harm's way or reasonably believed she was in danger).

 Furthermore, given the dispute about the timing of the gunshots and the fact that at least one of the bullets went through Green's side window, a reasonable jury *could* find that Schroeder's self-defense justification had passed by the time he shot at Green. *See Ellis v. Wynalda*, 999 F.3d 243, 247 (7th Cir. 1993) (holding in Fourth Amendment context that "[w]hen an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity"). Accordingly, because the video does not resolve the issues concerning whether Schroeder drew his gun as he backpedaled away from Green's approaching car and shot at Green only in

self-defense, Schroeder is not entitled to summary judgment on Green's Fourteenth Amendment claim.

Finally, Schroeder argues that even if he violated Green's Fourteenth Amendment rights, he is entitled to qualified immunity. Qualified immunity protects government officials from civil liability "when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This defense requires the court to determine whether the right violated was "clearly established" at the time of the alleged violation. *Pearson*, 555 U.S. at 232. Put differently, the qualified immunity doctrine "provides ample room for mistaken judgments" by protecting "police officers who act in ways they reasonably believe to be lawful." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (quotation marks omitted). A plaintiff can defeat qualified immunity by: (1) citing case law clearly establishing the pertinent right; or (2) showing that the conduct is sufficiently egregious that "no reasonable person could have believed that it would not violate clearly established rights." *Id.*

Schroeder is not entitled to qualified immunity because, Schroeder's actions were objectively unreasonable if viewing the facts in the light most favorable to Green. Officers cannot use deadly force against a suspect who does not present an immediate threat to them or others. *See Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). Schroeder may well have been justified in shooting at Green, but not if he no longer faced a threat

of serious physical harm or death. Therefore, Schroeder is not entitled to qualified immunity.

II.   Fourth Amendment Claim Against Officer Chvala

The Seventh Circuit also vacated the court's order denying Green leave to proceed on his Fourth Amendment claim against Officer Chvala. *See Green*, 567 F. App'x at 461. Assuming that the facts alleged in the complaint were true, the Seventh Circuit allowed Green to proceed on his Fourth Amendment claim that Chvala applied significant force against him after he was lying on his stomach in handcuffs, unable to resist. (*See id.*)

An objective reasonableness standard governs a Fourth Amendment excessive force claim. *See Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987). Under this standard, whether an officer used reasonable force "depends on the totality of the facts and circumstances known to the officer at the time the force is applied." *Abbott v. Sangamon County*, 705 F.3d 706, 724 (7th Cir. 2013). In the context of this case, the primary question is whether Chvala "used greater force than was reasonably necessary to make the arrest." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). Moreover, what constitutes reasonable force during the course of making an arrest is variable: "as the threat changes, so too should the degree of force[.]" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010).

Given that alleged excessive force was applied just after Green was subdued, and in a manner that could have been consistent with maintaining control, the court is skeptical a jury will find that Chvala applied significant force against Green based on the

assertion of a single knee thrust. Nevertheless, there remains a genuine issue of fact regarding whether Chvala kneed Green in the side after he was handcuffed, lying face-down and vulnerable. In *Green*, the Seventh Circuit emphasized what it had held earlier -- "once a suspect[] is subdued, violent force can be excessive." 567 F. App'x at 461; *see also Abbott* 705 F.3d at 732 (describing as "well-established" the principle that "police officers cannot continue to use force once a suspect is subdued"); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (the "prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior -- including resisting arrest, threatening officer safety, or potentially carrying a weapon"); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 686 (7th Cir. 2007) (finding that an officer who slammed an arrestee's head against a car could be held liable for excessive force).

     Moreover, while there may be multiple witnesses who corroborate Chavla's account and none who agree with Green's, the court cannot consider this possibility, likely as it may be, at summary judgment. *See Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) ("[T]he fact that the available eyewitnesses support the defendants' account of things does not preclude the possibility of genuine factual questions."). This is true even if, as Chvala argues in his reply brief, Green cannot show that he suffered any injury to his ribs, since force need not result in severe injury to be considered excessive. *See Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (stating that "an excessive force claim does not require any particular degree of injury") (collecting cases); *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988) ("The state is not free to inflict [] pains

11

without cause just so long as it is careful to leave no marks."). As the Seventh Circuit has recognized, "since the [Fourth Amendment] reasonableness inquiry 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" *Abdullahi*, 423 F.3d at 773 (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

Alternatively, Chvala argues that he is entitled to qualified immunity. Contrary to Chvala's assertions that Green must show that he had a constitutional right to not be "forcibly handcuffed," Green's claim turns on Chvala's alleged conduct after Green was handcuffed and incapable of resisting. Long before the events in this case, "it was well-established in [the Seventh Circuit] that police officers could not use significant force on nonresisting or passively resisting suspects." *Abbott*, 705 F.3d at 732 (collecting cases); *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009) ("It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders."). Since the evidence Green presented at summary judgment fit within this prohibition, if accepted by the jury, Chvala cannot enjoy qualified immunity protection.

### III. Other Motions

#### A. Renewed Motion for Assistance in Recruiting Counsel

Earlier in this case, the court denied Green's motion for assistance in recruiting counsel without prejudice, finding that he demonstrated an ability to ably represent

himself at that particular stage of the case. Green renews his motion, asserting that he lacks the legal knowledge and experience to litigate his case as it approaches trial. As the court pointed out in the order denying Green's first motion for assistance in recruiting counsel, Green has done well presenting his case and has demonstrated an understanding of the Federal Rules of Civil Procedure. Moreover, Green's remaining claim is relatively simple and does not appear to require much investigation. For these reasons, the court finds that Green is capable of trying his own case. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007).

Still, the court agrees that Green would benefit from having trial counsel and will at least undertake the effort to recruit counsel for this purpose. Accordingly, the court will grant Green's renewed motion for assistance in recruiting counsel.[4] Of course, the fact that Green has submitted ten rejection letters from counsel underscores that the court may not be successful.

### B. Motion for Extension of Time

Finally, Green moves the court to grant him an extension of time, apparently for him to respond to defendants' discovery requests. (Dkt. #85.) It appears that Green's motion is based on certain difficulties he perceives as a result of not having the assistance of counsel. Given that the court will attempt to recruit trial counsel for Green, his motion will be denied without prejudice to its being renewed by recruited counsel.

---

[4] Green's motion for reconsideration of the court's order denying his first motion for assistance in recruiting counsel will be denied as moot.

ORDER

IT IS ORDERED that:

1) plaintiff's motion for reconsideration (dkt. #45) is DENIED as moot;

2) defendant Chvala's motion for summary judgment (dkt. #50) is DENIED;

3) defendant Schroeder's motion for summary judgment (dkt. #54) is DENIED;

4) plaintiff's motion for leave to amend his summary judgment submissions (dkt. #76) is GRANTED;

5) plaintiff's renewed motion for assistance in recruiting counsel (dkt. #80) is GRANTED;

6) plaintiff's motion for extension of time (dkt. #85) is DENIED as moot.

Entered this 9th day of October, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge